Next argument is docket number 23-1176, DDR Holdings v. Priceline.com Mr. Crosby, you reserve five minutes, right? Yes, Your Honor. Okay. Your Honor, may it please the Court, the judgment below should be reversed because the District Court adopted a construction that limits the term merchants to purveyors of goods alone when the patent expressly defines that term to include purveyors of both goods and services. And so you're asserting basically the conclusion here. It's the provisional that talks about this definition of merchants that includes selling not only goods but services as well. Yes, Your Honor, and that is equally part of the patent specification. Just so we're all talking from the same place, the actual text of the 399 patent, don't worry about the provisional application, but just the text. If you were to open up 399 and read it from column 1 to column whatever, 25, that text does not attach to the word merchants, the idea that these actors, the merchants, are selling not only goods but services, right? So the printed text on the face of the patent does not specifically mention the word services as being sold by merchants, although there are indications within the patent that the invention is not limited to the specific example given in which goods are sold. For example, in the merchant manager where the shipping option can be N.A., not applicable. There are other places where it says that merchants sell something. So it's not, it certainly doesn't have any words of limitation that would suggest that goods are the only thing that's sold. And there's only one reference to goods. Throughout the rest it says products, which can have, and I think the District Court acknowledged, a meaning that includes both goods and services. Right. As I understand it, the District Court said in the context of this patent, the 399 patent, the term goods is interchangeable with the word products. Is that, am I just correctly capturing what the District Court said? Well, that's what the District Court said, but it's inconsistent with this Court's decision in Thorner where this Court said just simply using words in the alternative does not necessarily define them exclusively. So the key problem that we have here that we've got to sort out is the fact that the 399 defines merchants to be people that sell both goods and services. But now when we transfer over to ultimately the non-provisional, the 399, it talks at least expressly in terms of exclusively just about goods and not services. And so the services part of the merchant's definition from the provisional got taken out, got removed, got extracted. And so we have to figure out what is the meaning of that extraction in combination with the fact that the provisional itself has been incorporated by reference into the 399. Well, I think the fact that the provisional has been incorporated by reference means there was no extraction. The incorporation by reference of the provisional occurred simultaneously in the same act with the filing of the regular specification. The patentee presumably knew what was in that provisional and intentionally included it. And this Court's precedent says everything that's in that provisional is equally in that specification. So it's really just a false fact. Except for the fact that we have these cases like Modine Manufacturing, MPHJ, and Finjen, which seem to express an exception to the rule when it comes to incorporating some earlier application by reference into the host patent, where these three cases all seem to stand for the principle that when you look at the context of that incorporation, if in fact the text of the host patent has deleted something from what was contained in the provisional, then that's a very flashing light signal to a skilled artisan that the inventor has contemplated that whatever got deleted has been in fact removed from the meaning of that particular term. So I don't think that that's a correct way of looking at any of those cases. Those cases are all about how do you reconcile assertively conflicting signals about the meaning of a term that appear within the entirety of the patent, including its file history and its incorporated applications. Is it fair to say that all three of those cases, in terms of their holdings, they rejected the idea that the incorporated patent, whatever content was in there, controlled the meaning of a particular claim term in that given case? I'm talking about Modine Manufacturing. MPHJ and Fingen. So I think the one that's closest on point is Fingen because that's one that actually involved express lexicographic definitions. This Court's never declined, as far as I'm aware, to apply an express lexicographic definition that's incorporated in a patent. But in Fingen you had two different competing lexicographic definitions. One was in, and both of them were incorporated by different applications by reference. Neither of them were in the patent. The Court looked at these two different definitions and it didn't emphasize the sequence, which came first and which came later. It looked at the patent itself and said the entire patent includes embodiments. So the issue was whether this definition, which was otherwise the same of this term downloadable, should include small, as in some of these incorporated applications, or not include the word small, as in some of these incorporated applications. Could there be essentially two competing definitions? If we look at the provisional, I think that's the one that you are arguing for in terms of merchants. But then when you look at Column 22, it seems like there merchants is not talked in terms of services. Well, so in Column 22 that is not the definition. And it's Abbott Labs versus Andrix actually makes clear that while is can, in some circumstances, signal that a patentee is trying to define a term, in Abbott Labs there were also instances where the patentee defined terms using specific lexicographic terms, using means or defined as. And in Abbott Labs the Court said is does not connote definition where elsewhere within the patent or file history the patentee specifically used lexicographic terms. So I don't think you can infer that is this definitional in the printed patent specification. So if we disagree that it was definitional in the provisional application in terms of merchants, do you believe that you lose? No, Your Honor. So for two reasons. First of all, there is no dispute. I don't think anybody has argued that it says defined as. But I think the principle that you draw that I wanted to land in Fingen is that when you look at the context as a whole, that the general rule is that you interpret claims to incorporate to cover all the embodiments that are disclosed. And so the totality of the combined specification in Fingen included both embodiments with small downloadables and embodiments with large downloadables. Now let's contrast Modine, where Modine really truly was a case of deletion. And so there was a new specification that was filed that was identical, as a continuation part, identical to the previous one except in every place where a certain range existed, it was replaced with a smaller range. And this Court said in that circumstance, and also there was prior art that was prosecuted over that had the larger range but not the smaller range, and said in that circumstances it was conspicuous and unequivocal that this was intentional to limit this term. There's no definition in there, but the Court was construing this range by virtue of the examples in the patent. We have an understanding why in the final patent here, the 399, it doesn't talk about merchants in the context of selling services. It only talks about merchants in terms of selling goods, in direct contrast to the provisional application. Do we know why that happened? Because mom wrote a cookbook. Mom wrote a cookbook. Two of the inventors are father and son, and mom wrote a cookbook, this Dunwoody Gourmet cookbook that they used was actually the example that they used to illustrate the operation of the invention. But what they're selling is essentially printed matter when it comes to this invention. As your Honor knows from the opinion in the previous DDR case, this patent was found to have an inventive concept that was a way of creating a composite web page to conduct e-commerce. The subject matter of that e-commerce is immaterial to the purpoint of this invention. It was just this was the example, and again, this Court does not ordinarily construe, even when there's a single example, does not ordinarily limit claims to that example when their ordinary meaning would be broader. And here we have something more than ordinary meaning. We have express lexicography. So you would need what you have in Modine, which is something that is clear, unequivocal, that can't be interpreted in multiple ways, before you could infer from just the fact that they discussed this embodiment with goods that they meant to market that way. After you said mom wrote a cookbook, I got lost. So I'm still stuck on my question of why does the text of the 399 patent not describe merchants as selling services as well as goods, when that was very clearly what the provisional was expressing as to how to understand the meaning of the term merchants. Because the 399 patent is talking about, is describing a specific embodiment of the invention, and they just happen to use, as the example of what's being sold using the invention, this cookbook, which happens to be a good. But there's literally no emphasis at all on the importance of that fact. The invention is about how you are able to conduct e-commerce on the web without having to set up your own store using this composite web page that's provided by an outsource provider. And what you sell is completely immaterial. So I think it's just happenstance. Feel free to continue or save the remainder of your time. I am in my rebuttal time, Your Honor, so I will reserve it. Thank you. Good morning, Your Honors, and may it please the Court. I'd like to pick up where DDR's counsel left off with whether the statements are clear and unequivocal. And the problem here with the term merchant is that there isn't clear and unequivocal language for a single definition. And the court's precedent has long counseled us that we're to look at the entirety of the intrinsic record from beginning to end. That includes the provisional. It includes the non-provisional. We're looking at the full scope of the intrinsic record here. And there's no clear and unequivocal way that we can get to a single definition here. We, Priceline and Booking, believe that the definition set forth in the non-provisional, it is definitional. But it further reinforces why we should look at the entirety of the intrinsic record and look at what merchant means in the context of that entirety of the intrinsic record. We know from the non-provisional that merchant is limited to goods. It's limited to products. That's what the whole point of this invention was. The other side is saying it's just a preferred embodiment, though. It's not, Your Honor. If you look at column 22 of the patent beginning at line 5, it sets forth what the present invention is. The present invention, and it talks about the foregoing discussion, and that's right before it discloses what a merchant is. And that definition of merchant, that's at Appendix 870. The provisional and the non-provisional actually use that same description of merchant when it's talking about the context of this invention, what the applicant intended to invent here. Wait a second. 870? I thought the provisional at 876 is where the definition of merchant is. Yes, Your Honor. The provisional at 876 has that definition of merchants that DDR relies on. It does use the word defined. We don't disagree with that. But if you look at 870, in the middle of the... Why doesn't its use of that word defined, and also including both goods and services, then be the one that would actually be incorporated into the non-provisional? Why wouldn't that control? It doesn't control, Your Honor, because we know from this Court's precedent, such as the Gutman case, Jack Gutman, that a definition only controls if it's not contradicted by the entirety of the intrinsic record. If the intrinsic record casts doubt on a definition that's set forth somewhere in the specification or the provisional, then it can't control. It doesn't arise to the level of clear and unmistakable language that this Court has the plain and ordinary meaning to control. And here, the plain and ordinary meaning of a merchant is a provider of goods. That's what we know from how the specification describes what this invention is intended to do. And turning back, Your Honor, to Column 22 of the 399 Patent, where it sets forth that this present invention, that the present invention language, and then it goes into what the merchant is defined as in the 399. Just to be clear, you're not relying on or not asking us to consider extrinsic evidence to figure out the meaning of the term merchants. It's just a purely intrinsic evidence exercise, right? We think the intrinsic evidence fully supports the plain and ordinary meaning of merchant to the extent that you looked at the... Right, but then that raises the next question. What the heck is the plain and ordinary meaning of merchant? Well, in the context of this invention, which repeatedly uses the phrase goods to be sold or products to be sold, and in the 399 Patent, it repeatedly discusses products, commodities, a buying opportunity. This invention is about merchants selling goods. That's what this invention is about. So when you're looking at what the plain and ordinary meaning of merchant is, you're looking at it in the context of the specification and what the applicant meant in this patent. The district court was right in evaluating this patent and the shift, as we know that the court must do in MPHJ, the shift in language from the provisional to the non-provisional to reach the conclusion that the applicant went back to the plain and ordinary meaning of merchant in the non-provisional. It's a provider of a good, and that's all that's necessary for this court to resolve in order to affirm. Because DDR stipulated that if this construction includes a good, regardless of what else a merchant may purvey, as long as a merchant purveys a good, DDR stipulated to non-infringement. And so all this court is tasked with resolving is does a merchant need to sell a good under the plain and ordinary meaning? And we would argue that the answer to that is yes. I saw something in DDR's gray brief that suggested you're stopped from making certain kinds of rulings. Something about how something already happened at the patent board and the patent board made some kind of ruling and now you're stuck with that ruling from the patent board. Can you comment on that? We disagree with that, Your Honor, first and predominantly because DDR didn't raise this argument in its opening brief. It very well could have because DDR raised the argument below. The court evaluated it quite thoroughly below and the problem below is that DDR also didn't raise the argument adequately in its briefing below. And so the district court took this up and said that DDR was waived effectively from raising this estoppel argument. That's at Appendix 1394 and the discussion actually carries on quite a bit, Your Honors, from 1371 to 1396. Quite a long discussion about whether this argument was raised and adequately preserved. But even on its merits, the standard that the PTAB was tasked with resolving on claim construction was broadest reasonable interpretation. And we wouldn't be estopped from arguing against the PTAB's findings under the Phillips standard, which this court applies. Where would we be if we looked at the 399 specification, just the text on the face of the 399 patent, and couldn't conclude what is the right meaning of merchants? Where would we be left with? Would we be left with running back to the provisional and just falling back onto that definition? No, Your Honor. I don't believe so. I mean, I think if you looked at the 399 patent on its face and you couldn't conclude what the plain and ordinary meaning of merchant was in light of the entirety of the text of the 399 patent, there is extrinsic evidence that supports our position. That extrinsic evidence defines merchants as a provider of commodities, as a provider of goods. And so to the extent, and that definition is consistent with the intrinsic evidence. And so you can rely on extrinsic evidence when it is consistent with the intrinsic evidence here. And so that evidence would support us as well. Do you want to speak to commerce objects at all? Yes, Your Honor. I would. Because commerce object is separately, a separate basis on which this court could affirm the judgment of non-infringement. These are independent terms and the stipulation recognizes that, the stipulation of non-infringement between the parties. So this court need not even reach merchant if it affirms the construction of commerce object. And there the parties really, the only dispute between the parties is whether the word product in the district court's construction means goods or services. The district court lifted the construction of commerce object directly from the 399 patent from the non-provisional. It didn't appear in the provisional. It said product repeatedly. And DDR argued, well product means goods or services. But the problem with DDR's argument there is that goods is repeatedly distinguished from services throughout the non-provisional and provisional. And in fact it's equated with goods. And it uses, the provisional in fact uses the disjunctive. Products or services. And the district court below properly recognized that that's a distinction. That means you're distinguishing the two things. And if DDR admitted that that distinction results in a redundancy. If products or services, if products means goods or services, then when the provisional said products or services, what DDR asks that to mean is goods or services or services. And that makes no logical sense. It does result in a redundancy. The district court was right to reject that redundancy. DDR asks for it again in its reply brief. It says yes, wants this court to affirm that products or services equates to goods or services or services. And that's just incorrect and inconsistent with the plain and ordinary meaning of product as understood in this invention and this specification. There's repeated instances in the intrinsic record in which product refers to something that's tangible. That's what we all know product to be in the context of this invention. When a merchant is dealing with commodities, a buying opportunity, selling goods that have sizes, colors, that are packaged and shipped, all of those things are products. And just responding to DDR's argument that some of the products don't require shipping, well, of course, back in 1998, there was digital media such as movies, music. Those are products that don't require shipping, but those are goods. And that's reflected in Appendix 878 in which the provisional refers to entertainment websites. Those are the types of websites that may be selling products in the context of this invention that don't require shipping. I haven't heard you say the case names Modine or MPHJ or Finjen. Do you not think those cases have relevance here? I do think they have relevance here, Your Honor. I apologize. I thought I mentioned MPHJ earlier, but when we're looking for merchant at the shift of the definition set forth in the provisional to the language put in the non-provisional, it is significant under MPHJ. It instructs you to look at those intentional deletion of word choices and determine whether that reflects a significant shift in the claim scope. And we do think that that supports the argument here, that to the extent that there was a definition set forth in the provisional, it was intentionally deleted. Services was intentionally deleted from the non-provisional, and that reflects a significant choice by the applicant here. But you don't even have to reach that because there's enough ambiguity between the provisional and the non-provisional here to say there's not quite a clear and unmistakable lexicographic definition that anyone could go with here. The court requires it to be with reasonable clarity, deliberateness, and precision. And suffice it to say, there is some ambiguity here. And so if there's ambiguity, then you need to look at the entirety of the intrinsic record here. And merchant has a plain and ordinary meaning in the context of this invention, in the context of the 399 patent as it was claimed, and it means a provider of goods. And as long as a merchant has to provide goods, the court should affirm because the DDR stipulated to non-infringement on the basis that a merchant provides a good. Maybe I'm playing devil's advocate here, but it doesn't look like a ton of ambiguity I'm seeing at the top of page 876 in terms of how merchants define. Can you just further explain the ambiguity you were referring to? The ambiguity, Judge Cunningham, is between the shift between the provisional and the non-provisional. I agree with you that the statement at the top of 876 uses the word defined, but earlier in the provisional, the language at 870, where it says, next chain merchants are the producers of the goods to be sold through next change, that's the same language that finds its way into the non-provisional. And indeed, that language in the non-provisional is preceded by the present invention language, which we know from this court's case law is significant when looking to see whether a term has been given a limited or specific meaning. At least in the context of the provisional here, it could be fairly read as some ambiguity between what merchants are. I'll just raise one other distinction in the provisional between 870 and 876. 876 talks about a merchant value proposition. It says, merchants, defined as producers, manufacturers, and select distributors of products or services, are strongly attracted to the sales potential of the internet. This is sort of marketing language referring to merchants in a broader context, but then on 870, it's talking about this invention. It's going back to this invention, and 870 is the language that finds its way into the non-provisional. It talks about the next change concept, and this is what the applicant intended to include in the non-provisional and to claim. Unless there are any further questions, Your Honor. Okay, thank you. Thank you. So counsel's argued that there's not a clear and unequivocal intention to include, to more broadly read merchants in the printed patent specification, but that's not the standard for having a broader reading of the claims. We ordinarily read them to include all the embodiments that are disclosed, including those that are incorporated by reference. Unless there's a clear and unequivocal disclaimer, as in Modine, where it was conspicuous that there was this substitution, that's a deletion. There was no deletion here because the filed specification is not simply the provisional specification. It's been edited to be filed. So I would suggest that by saying that it is not clear and unequivocal that the patentee intended to restrict the definition, she's admitted, counsel's admitted, that the standard for narrowing is not present. If it is unequivocal, then you need to go with the broader construction, which is the one that is set out in clear definitional terms using the terms defined as and incorporated by reference in the specification. The discussion of merchants as sellers of the goods, that's with a definite article referring back to what's been previously disclosed, namely what's the cookbook that's being sold in the example. That occurs in the context specifically described as a preferred embodiment. At the end of the patent, it says there are many other ways that you can implement this. This reference to the present invention is in a preceding paragraph that doesn't specifically refer to that discussion of merchants. These are ways you can do according to the present invention. So these are embodiments of the present invention, not equating this specifically with the present invention. The definition in the provisional application does not contradict anything in the regular application because the definition in the provisional says that merchants are sellers of goods or services. In the regular application, it gives you an example of a merchant selling a good. It's within the scope of the definition. There's no contradiction with that definition in either the embodiment or the language of the regular specification. We submitted evidence that the plain and ordinary meaning of merchants and products in the prior art included in the one hand purveyors of services and on the other hand services themselves. Those were actually unlike the general purpose dictionary definitions that were submitted by the appellees. These were examples including a prior art of record in which merchants and merchandisers are described as selling services. In terms of whether they're stopped from arguing now that this reference to merchants as the in column 24 is itself definitional, we did not waive that argument. It is a rebuttal argument. We made it in our reply brief. The issue in the district court was whether we used the magic word estoppel. We did point out in our opening brief that the PTAB had in fact rejected the specific claim that this reference to merchants as sellers of goods was definitional and that they should be held by that. The district court was very interested in whether we used the word estoppel or not, but we substantively raised the issue. As to whether there's a different standard from the broadest reasonable interpretation to the Phillips standard, which is now applicable, with respect to lexicography, there's no distinction between BRI and Phillips. It's the same, have you used words of definition, have you used these symbols or markers of definition? With respect to the commerce object, below there was no separate reasoning about that. Everybody agreed that commerce object should be construed consistently with the term merchants. Commerce object is a term that the patentee used essentially generically to refer to the object of the commerce that is being conducted with the invention. It should be whatever merchants sell. I think I'm out of time, Your Honor, but I'm happy to answer any further questions if you'd like. Mr. Crosby, this patent has expired, is that right? That's correct, Your Honor. Okay. Are there any other pending litigations with this patent other than the ones before us? No, Your Honor. Okay, great. Thank you very much. Thank you, Your Honor.